May it please the Court again, Terrence Steinhardt for Appellant Kobalis in the 76th case, which is the 12B6 motion. There are two causes of action. The first one is to recover damages for payment of usurious interest. The second one alleges that the obtaining of the dissolution order, which is the subject of the appeals we just argued, was an abuse of process primarily because it's a constitutionally void order that the bankruptcy court has no authority to issue. There's no statute authorizing a bankruptcy court to order a trustee to dissolve a bankruptcy corporate debtor, and the order was done without giving notice that they were seeking a dissolution order. The motion was to approve an order to sell the assets of the bankrupt debtor, but tucked into one paragraph of the order was this dissolution provision, and there was nothing in the notice of motion, which for due process requirements has to be in there, that they were seeking a corporate dissolution order. The only way you could have found that out is read through the whole motion, including the points of authority. Are you going to talk about the standing issue? The standing issue? Yes. Well, yes. Okay. I do not want to start there. Okay. I'm not getting any traction on constitutional issues, so I'm going to go to... Well, that's not the... This is a logically prior question. If you don't have any authority to be representing anybody in this case, then your client doesn't, then nothing else matters. Okay. Well, okay. First of all, I just wanted to say that the overarching issue is whether the bankruptcy court has to take as true the allegations of the first amended complaint, the chief allegation of which is that at the time that the loan closed and my client handed four warrants to YA Global, those warrants were worth... Right. Well, if that were true, then there never should have been a bankruptcy, and you had every opportunity in the first Chapter 7, the bankruptcy because, in fact, you were not bankrupt. Well, we've alleged, yeah, that we were unaware that the warrants had such value. Well, that's your problem. I mean, they had the... Whatever value they had, they had at the outset. Well... If they don't have it at the outset, then it doesn't make a difference. They did have it at the outset. Okay. We were unaware of that. Well, then you should have known it. We should have known that, but we didn't. So why isn't that just the end of it, i.e., that this is essentially a stop? I don't know. Judicially, a stop doesn't necessarily seem to me to be right. It's rather, it's just been decided in the case, not because you took a position. It's just been decided already that there were, that, in fact, all this didn't exist, and that's why you're in bankruptcy. Well, it's never been decided. But it wasn't necessarily decided by the determination that there was a bankruptcy estate and that there was a settlement and so on. Isn't that all essential to the fact that these cases went on for eight years? If, in fact, this value existed at the outset, there never should have been any proceedings. There shouldn't have been. Nobody's raised the issue of a stopple except your Honor right now. I'm sorry. I don't think. They use the word traditional stopple, but they certainly use the word a stopple. I mean, Counsel, we've had three, Chapter 7, Chapter 11, Chapter 7, three times, there's been some sort of declaration that this company was bankrupt. Now there are different procedures as to how we deal with that versus Chapter 7 versus Chapter 11. I think what Judge Berzon is trying to get at is why now can we all of a sudden pretend none of that happened and start talking about the valuation of these options? Don't we have to deal with the three bankruptcies before, and why aren't we, in fact, stuck with those? Well, we're not trying to reverse the bankruptcies. But you implicitly are, because if this value existed, there wouldn't have been any basis for the bankruptcy to begin with. Yeah, there wouldn't have been if my client would have realized. First of all, I was in counsel. Well, that doesn't make any difference either. Okay, well, but my client didn't realize that, because if they would have realized that, they obviously would have tried to stop the bankruptcy. That's why litigation is over at some point. These are things that all existed at the time if they existed. And nothing, they necessarily have to be measured from the time of the first bankruptcy filing. That's when, Matt, that's the time, or before that even. That's the point at which you're saying that all this value existed in the corporation. If all this value existed in the corporation, then the involuntary Chapter 7 should never have gone on at all. Well, it's not that all the value existed in the corporation. It's that the debt or the creditors... Well, when they put a schedule about what your debt was, you're saying that this whole debt didn't exist. No, when they put why a global claim to be a creditor... Right, did you ever challenge that? No. No, okay. We didn't challenge that, because... When the plan was issued, the Chapter 11 plan that your client did propose, correct? Yes. That wasn't raised then either. Correct. And then when it went back to Chapter 7, it wasn't raised there either. Correct. Okay, so how did we get around that? Well, we alleged that we were inadvertently unaware that these warrants had substantial value. What does inadvertently unaware mean? It means you made a mistake. Correct. Right, people make mistakes all the time in litigation, and they're stuck with them. Correct. Now, we're not trying to overturn the bankruptcy or what happened in the bankruptcy. We're suing for usurious interest paid. But that was all before the bankruptcies began, when the deal was struck, correct? We're alleging that if... We've alleged that the value of these warrants, when handed over, they could have been sold on the open market if a buyer valued them using black shoals, which happens every day. So when... They could have been sold for $10 million by... When YA Global Investment put in their claim as a creditor, you could have challenged it on that basis, but you never did. If we would have known... But you didn't. We didn't know. Correct. We made a mistake, but we ended up paying usurious interest. That's what we're suing for now. All of this stuff that would happen in the bankruptcy stands pat. Well, who's the we? That's where we're back to the standing issue. Well, I'm representing COBOL, so I say we, COBOL. I understand that, but the question is whether the party that would have had the authority to bring this cause of action was actually a trustee. Oh, the usury action? Yes. Okay, let me address that. There are four usury claims. Two of the usury claims came into existence after the case was converted to Chapter 7, after the settlement agreement was made in the Chapter 7 case. One of them came into existence by the disbursement of $1.6 million out of an escrow, which was set up as part of the Chapter 11 plan, and it was stipulated in the settlement agreement by my opponents that that $1.6 million was not property of the estate. So the only other person it could be property of is COBOL, because they're the ones that put the $1.6 million into the escrow. So that usury claim was never property of the estate, and we can get treble damages on that, so that's worth over $5 million right there. Yes, Counselor, I'm still confused here. I can never say the word usury, so I'll say the extremely high loans. I have trouble with that word. The extremely high loan claim, that would have been established when the initial deal between YA Global and COBOL was formed, correct? When the deal was signed. That the rate of interest that was being demanded was usurious? Yes. Correct, but not the claim to recover for usurious interest paid. That arises after you've paid all the principal, and you start paying the first dollar of interest. That's when a claim of usury... Just entering into a usurious loan, all that does is saying anything you pay can only be credited toward principal, and any dollar past payoff of principal is a payment of usurious interest. Assume you're right here for a second. Okay. Then bankruptcy is declared, involuntary Chapter 7. Yes. And then it's switched to a Chapter 11. Correct. Now at that point, in either one of those transactions, why isn't COBOL, the management, the ownership, they're not there anymore? It's now the trustee who comes in and makes the decision for the future of this company. No, because in a Chapter 11, the bankruptcy debtor is a debtor in possession. It's unlike a Chapter 7. All right, but that's determined by the plan, correct? Even before the plan, they're in charge of their own business. But the plan lays out what's going to happen with the business, correct? Once the plan is confirmed, it lays out how they're going to make payments to the creditors. Okay, so let's focus on that plan, because I think that's an important document in this case. Where in the plan does it reserve any rights, property, interest, anything? Well, the plan, according to 1141B, everything that is devoted, all assets according to the plan that are devoted to the proceeds of those assets are devoted to be used in the plan to pay off creditors. Those remain in the Chapter 11 estate to be handled by either the debtor in possession or some entity that they set up to manage these assets under the plan to be worked in the plan to pay off the creditors. Anything that's not dedicated to the plan becomes vested in the debtor, free and clear of the estate. The $1.6 million escrow wasn't part of the plan? I'm sorry? The $1.6 million in escrow, that was not part of the plan? The judge imposed an escrow condition and made cobolas, put monthly payments into it that added up. For the purpose of being available at the time of the plan? Not for the purpose of cram down interest because there supposedly was a secured creditor that voted against the plan and was being forced to go along with it. Okay, so it was so that the plan would operate? What? It was part of the plan? Yes, it was in that sense, but not to be paid to creditors. I want to get back to something you just said. You just said that unless it's clearly designated in the plan, property reverts back to the debtor? Vests in the debtor, correct. Do you have any authority for that statement? Yes, it's in my brief. Do you know the case? It's statutory authority to begin with. It's 11 U.S.C. 1141B. Okay. And I'd say the authority, which is somewhat off, but it's Ninth Circuit authority, is the consolidated pioneer case and the bankruptcy appellate panel case that interprets that case of Captain Blighter's. I guess what I'm trying to understand then is how can we, if your reading of those cases is correct, how could we ever have finality in these bankruptcy claims? Because someone could say, well, I had this other property and it's not listed in the plan so therefore it comes back to me. It seems to me the opposite would have to happen, that you'd have to designate, identify the property specifically that is not going to be at the whim for the creditors, like a reservation clause of some kind in the plan. Let's say these five things, the debtor's going to keep these five things, the rest of them go to the creditors. Otherwise, I don't see how anyone could ever keep track of the property in a company. 1141B says just the opposite. Yes, but not in the context of a conversion. I mean, the conversion statute specifically contemplates a post-confirmation conversion, right? And, I mean, frankly to me, the cases that are more logical are the ones that say that what is in the converted bankruptcy or what was in the bankruptcy or what was in the Chapter 11 and in this instance in the Chapter 7 at the beginning. It's whatever the estate was at the outset. And that's a much simpler way to look at it. Our cases seem to make it a little more complicated. But I think they're getting towards a position like that. It doesn't make – I understand that if the plan is – not converted, that's what happens, but when it's converted because essentially there was a failure of the plan, why aren't we back to what went into the Chapter 7 to begin with? Because – As the estate. In other words, things that happened afterwards, no. But as whatever the estate was at the time the Chapter 11 was filed and in this instance whatever the estate was at the time the Chapter 7 was filed. Because whatever is dedicated to be used in the plan stays in the Chapter 11 estate to be administered under the terms of the plan. I understand that's what you're saying. Yes, and that's what the law says. Whatever is not designated vests in the endeavor. But this wasn't designated because you never scheduled it as existing, right? You never listed it as an asset to start out with, right? You're talking about these usual claims? The usual claims. They were unlisted assets. Right, exactly. So, I mean, isn't it implicit in the plan? This is everything that we know about and everything that we know about is going to be in the plan. And if we don't know about something because we haven't listed it, well, then it doesn't exist for purposes of the plan and it just has gone away. Because it hasn't been – it's not an asset of the estate. I cited a statutory and case law that says whether it's listed or unlisted unless it's specifically designated to be used in the plan to pay off creditors. Whether it's listed or unlisted, it vests at confirmation of the plan. It vests in the debtor. This is very complicated. Thank you very much. If you read my brief carefully – I did read your brief. Read it again. I explained it. It is complicated, but I think I explained it correctly. Thank you very much. And carefully. Thank you. Hi. Nicholas Camiotti, Bressler, Amory & Ross on behalf of YA Global Investments. Excuse me. I don't think it's that complicated. I think that we have a lot of things being thrown around here in an effort to create confusion and make things complicated. I want to just walk through a couple things very briefly just so that the Court is clear. The $1.6 million that were paid into escrow, the Court ordered that because my client said, this plan is never going to work. We need some security in the event that the plan fails. Ultimately, the plan fails. The order specifically says that my client is – Okay. So when the plan fails after confirmation – Correct. Meaning it wasn't defaulted, it wasn't carried out. Then what? Does it go up in smoke? No. It was converted to a Chapter 7 for the purposes of evacuation. I understand that. But does the plan – I mean, our case law does seem somewhat complicated to me. And it seems more logical, and I don't know whether you've been taking this position, that when the plan fails, we're back to whatever was in the estate at the time, at the beginning of the Chapter 11. And in this instance, that's whatever was in the estate at the beginning of the Chapter 7. And that's what we're dealing with. Correct. It's all of it. It doesn't matter what's in the plan or anything else. It's all of it. Everything. But that's not our case law. Well, I think that it is. If you look at Captain Blyther's, it says – Which is not our case law. That's a bad case. But the Pioneer case seems to assume that there is a reversion unless there's something about the plan that reserves it. Well, first, I'm confused. The Captain Blyther's, it says Court of Appeals for – I know, but it's an unpublished opinion. Oh, oh. I understand. Okay. You just confused me. I was looking at the wrong thing for a second. The idea here that's being espoused is if we purposely or unpurposely fail to disclose assets, we get to keep them. That flies in the face of – Well, that's an estoppel argument, right? It's not a standing argument as such. Well, the standing argument is simple. I was going to get to that point as well. There was a global settlement agreement. After the plan fails, there was a couple other motions and other litigations which Judge Albert chastised Kabbalah's for engaging in. A settlement agreement was reached between the trustee who was appointed and YA Global. That settlement agreement defined claims as any potential claims of any nature, suspected or unsuspected, whether or not sealed or hidden. Such claims specifically included lender liability or usury claims. In addition, there was an asset purchase agreement after when YA Global submitted the credit bid where they received all of Kabbalah's property, which included its real and personal property and causes of action in which Kabbalah's or the estate possess any interest. These claims – But somewhere there was a provision that said something about pending litigation. This wasn't pending. I don't – There was a list either in the settlement, I think. It lists causes of action of any kind, of any character whatsoever, known or unknown, suspected or unsuspected. The court approved the APA and it was never appealed. To me, that's end of story. These claims are either YA Global's or the trustee's. Kabbalah's has no claim to them. So the idea that YA Global is going to sue itself for getting usurious interest – I have that problem as well – for getting usurious interest that it received as payments pursuant to a court order. That's what we're talking about here. Let's boil this down. They failed on the plan. YA Global was entitled to receive money. YA Global received money. That was it. The settlement agreement was reached. Everybody moves on. A year later, we get into appeals. We get into collateral attacks in New Jersey. We get into this complaint filed in Orange County which we removed back into the bankruptcy court. That's it. As far as standing, there's no standing. If you look substantively into the claims that warrants were somehow worth $10 million – Oh, really? That's news to my client because my client would have loved to trade on those things and made $10 million and we would definitely not be here today. We wouldn't have been here last year. We wouldn't have been in Orange County in 2013. We wouldn't have been in New Jersey in 2012. This would have been gone a long time ago if these things were actually worth $10 million. The bottom line is, Kobalas failed to get its approvals, the stock tanked, and the company went into bankruptcy. All the rest of this is just litigation tactics and it's at this point time to just put an end to it. I take it the answer, at least in part, is that settlement agreement didn't cover claims that came into existence during the Chapter 11? It said all claims, known or unknown. I understand. Any claims that came – first, I mean, to say that you don't know the value of your own investments is silly. And to sue somebody because they purchased something from you and you didn't know how much it was worth? You're the one who's selling it. But what – the language that you're quoting was with regard to a waiver of any future litigation. Well, and my client also – Is that right? Is that what it was about? Waiver of all future litigation? What is the context of the language that you're quoting? Which time? Just now. Causes of actions, that's paragraph 5.1 of the asset purchase agreement. Okay. And it is what? It is saying that that's what's being purchased? Yes. There's two. In the settlement agreement, we have a release of all claims. And then in the purchase – asset purchase agreement, YA Global obtained the rights to any claims, whether known or unknown. This was, to be blunt, to avoid this litigation. These – we were trying to put an end to all of this and tried to button this up every which way sideways. Apparently, we did not do so. Okay. Are you arguing the whole thing? No. I'm – if you have no further questions, Your Honor, I will happily sit down. Thank you. May it please the Court, Jeffrey Golden of LaBelle, Wyland-Golden-Freedman. You know, there's a lot of complexity, I think, actually, in the law with respect to post-confirmation jurisdiction where the plan was confirmed and worked. And there's a lot of law and other issues out there. But in situations where the plan didn't work and then the prevailing view is that the assets go back to the estate, the trustee because – Assets. Pardon? Which assets? All of the – All the assets that were in the estate at the time of the filing of the Chapter 11? Yes, Your Honor. Does it make any difference that there was a Chapter 7 here first? If there was a Chapter 7 first? Yeah. You mean Chapter 7 to 11? Yes. This was – I mean, I don't – As far as I can tell, we're in Chapter 7 to a Chapter 11 to a Chapter 7. No, Your Honor. Property of the estate is defined as the date of the petition. So – First petition, the Chapter 7 petition. Yes, Your Honor. And – But that's perfectly logical to me. It's not – doesn't seem to be what our case law says. It – Well, about property of the estate? Well – In a post-confirmation situation. Well, I think – Conversion. In a post-confirmation conversion. In a post-confirmation conversion, it gets trickier because you have different things going on. You have plans that may provide – That's what we have here is a post-confirmation conversion. I agree. You can only have a post-confirmation conversion if you have a default or a revocation or something. I agree. And – But here you have a plan that wasn't consummated. Nothing happened of any materiality in the plan that allowed it to be consummated. In cases, as the Court may have just been pointing out, by – I'm not talking decisions. I mean factual context, Your Honor, where there's been like – the plan's been substantially consummated, but there's been some sort of default of the plan because a lot of these plans go on for years and not everybody complies with every term. That's a different scenario. All right. But – I mean, to be frank, I mean, this is a complicated, important issue. Should we be – Do we need to decide it in this case? No, Your Honor. Or – In other words, why isn't there simply – that there is – that this claim, whatever it is, was either sold to your colleague's client here or was – it simply – it was so basic to the whole bankruptcy that it's been decided and that's the end of it. Yes, Your Honor. I think those are independent but related concepts. But certainly, the trustee in this case sought and noticed to sell all of the assets of the estate and that was made clear and YA Global sought to purchase it. And to the second point, Your Honor, there was never any opposition or response to that at all. So on – Senator, what I'm saying is to decide that, we would have to agree that you had this thing as opposed to the fact that it was all – it was just dead by now. That is, it had – if this – that the earlier proceedings in this case had essentially precluded any notion of this claim arising later because if it existed, it existed at the time of the original filing and it wasn't scheduled by anybody and it was essentially determined – it was precluded from being raised at this point, period, the end. It's not a standing ruling which doesn't require us to figure out what assets you actually would have had if all this hadn't happened. It just – because that's a complicated question. I mean, that has ramifications in other instances. So your question is, Your Honor – What I'm trying to find out is do we need to get to the standing question? I don't think you do because, again, we sold all of the assets that existed in the estate that the – so I don't think that you need to get to that question. And what – and there's not been an abandonment of any of these claims to the debtor. There are sections of the Banksy Code that deal with abandonment and that actually deal with unscheduled assets that say actually even after a case is closed that that asset actually still, under Section 554 of the Banksy Code, still remains property of the estate in any context. Here you have a plan that wasn't – that wasn't confirmed, but – It was confirmed. That's the problem. I'm sorry. That wasn't constipated. Sorry, Your Honor. I misspoke. I apologize. And the statute does say that at that point everything refers to the debtor in possession. And that's why we have all these complications. Well – I meant the debtor in possession, the debtor. Yes. That's what I was going to say. Actually, it's the debtor. And then we know that the Chapter 7 trustee is the representative of the debtor. Okay? So, I mean, I guess you could – you could start creating all these fictional concepts like the trustee, the non-estate debtor, and the estate of the debtor. But – but the Code speaks in terms of debtor in possession, which means trustee or debtor in possession, and debtor throughout the Code. So when it refers to debtor, you're referring back to the very entity that, as the Court asked at the beginning, beginning of the first Chapter 7, that existed. So – so it's not abandoned to the debtor. The Chapter 7 trustee, under Section 323 of the Code, is the sole representative of the estate. So – so there's no – the way the Code is structured, I think it has to be – Yeah, I think that's perfectly logical. I don't think it's consistent with our cases. Okay. Yeah. Okay, I understand. I'm not – Well, let's assume that Judge Berzon is right, that the cases don't quite line up with the way maybe logic would dictate. It happens sometimes in the Ninth Circuit, I know. But I think what she's asking is that is there another avenue where – let's assume that we – there's not this logical progression on standing. The fact that this has been litigated so many times, or with all these things happening, with no objection from the other side, until everything is done, is there another doctrine, such as estoppel or something else, that would be a – what I would say a cleaner way to resolve the issues than having to run through the minefield that Judge Berzon is discussing? Yes, Your Honor. An estoppel is a different way of doing it. And I apologize if it wasn't being clear before, but yes, I mean, in terms of they're not raising it, the assets originally, not responding to any of the pleadings, the oppositions, not appealing them. The list goes on in terms of their failure to take any action. And that's not judicial estoppel, which usually means, why did you argue? It's estoppel-estoppel, i.e. it's been precluded by decisions of the court. Yes, Your Honor. You have that estoppel, as well as the estoppel – I mean, the very fact that they're arguing that they have assets that they as the debtor never disclosed or scheduled in the first place as well. But therefore, what happened after that precluded them from doing it again because it's already been decided that there is nothing else. Yes, Your Honor. All right. You're about out of time. Thank you very much. Thank you, Your Honor. Once again, we'll give you one minute, but really one minute this time. I hate to keep on bringing this up. The settlement agreement is constitutionally void. There was no clerk's notice given of that. I devote a big section of my opening brief and my reply brief to that issue. Please read that. It's constitutionally void. Every argument that Mr. Cagnotti made based on the settlement agreement is null and void because that agreement, proper notice was not given by the clerk to all of the people it was supposed to be given to, including all of the creditors of the estate. And you got notice. But everybody got notice. But everybody got notice. No, they didn't get notice. The only... What you've got in the file is an unverified proof of service. It's not under oath that was put in there by the trustee. But nobody has shown up to say they didn't get notice. But there is no proof of service. We're objecting that everybody's... Your time really is up now. The second Cabalas case is now submitted. And the last case of the day, Vera v. Colvin, has been submitted on the brief, so we are in recess. Thank you.
judges: Berzon, Owens, Davis